**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Mark B. Feick, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART** |
| | ) | **AND DENYING IN PART** |
| vs. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Sivalls, Inc., | ) | |
| | ) | Case No. 1:12-cv-107 |
| Defendant. | ) | |

This is an action brought by plaintiff against defendant seeking compensation for alleged violations of the Americans with Disabilities Act ("ADA"), the North Dakota Human Rights Act ("NDHRA"), and what may be a separate claim for mental and emotional distress.  Before the court is defendant's motion for summary judgment (Doc. No. 14).  Plaintiff opposes the motion - at least with respect to the ADA and NDHRA claims.

## I.     STANDARD OF REVIEW

The law governing motions for summary judgment is well known to this court and need not be repeated here.  However, it is worth noting what this court recently stated in another ADA case about motions for summary judgment in employment-discrimination cases:

> "Motions for summary judgment in employment discrimination cases are scrutinized more carefully because of the inherently factual nature of the inquiry and the factual standards set forth by Congress." Henderson v. Ford Motor Co., 403 F.3d 1026, 1032 (8th Cir. 2005).  As such, "'summary judgment should seldom be used in employment-discrimination cases.'" Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir. 1997) (quoting Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994)). "Nonetheless, 'summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case.' " Simpson, 425 F.3d at 542 (quoting EEOC v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001)).

Lizotte v. Dacotah Bank, 677 F. Supp. 2d 1155, 1161 (D.N.D. 2010).

1

## II.   DISCUSSION

### A.   ADA and NDHRA claims

Defendant's motion for summary judgment with respect to the ADA and NDHRA claims is limited to the argument that, even if plaintiff has established a *prima facie* case of violations, plaintiff cannot dispute defendant's putative, non-discriminatory reasons for not hiring him.  The court does not agree.  Based on the court's review of the deposition transcripts, exhibits, and other proffered evidentiary material, there is sufficient disputed evidence from which a jury could conclude that the real reason why plaintiff was not hired was his workers' compensation history and that the reasons subsequently proffered by defendant for why he was not hired were simply pretextual.

One reason that defendant now gives for why plaintiff was not hired was because he did not have a completely "clean" driving record.  However, there is evidence that: (1) the time period of concern to defendant was an applicant's driving record for the previous three years; (2) plaintiff had only one violation during that time period, which was a failure to yield with his personal vehicle resulting in a minor accident;[1] (3)  defendant hired one or more other persons for what, arguably, was the same position who did not have completely "clean" driving records; (4) defendant's insurer did not require an absolutely clean driving record; and (5) defendant's job description for "Driver, Trucking, and Shipping" stated only that the applicant have a "satisfactory driving record."[2]  In

---

[1]  Defendant claims there were two violations within the three-year period, but that is not supported by any record evidence this court has reviewed.

[2]  Defendant points to its North Dakota Job Service posting stating it had job openings for full-time employees in Williston for truck drivers with a "clean driving record with Class A CDL."  The jury could conclude, however, that, even if it found the job listing to be relevant, "clean driving  record" was a relative term or a requirement defendant was willing to waive for an applicant, like plaintiff, whose application disclosed only one minor violation within the three-year period.

addition to this specific evidence, there is also evidence of what the jury might consider to be defendant's shifting explanations for why it did not hire plaintiff - a point that applies to both of defendant's proffered explanations for why he was not hired.  Further, there is the fact that defendant's employment application required disclosure of prior workers' compensation claims, which appears to be a *per se* violation of the ADA's requirements,[3] and something that the jury might consider in assessing any after-the-fact explanation for why plaintiff was not hired.

Defendant's second reason for why plaintiff was not hired was the Williston branch manager's initially-proffered reason for not considering plaintiff, which was expressed in a memorandum to the corporate office after plaintiff made his EEO claim.   In the memorandum, the branch manager stated the reason why plaintiff was not considered was because the branch manager was under the impression after visiting with plaintiff that he was only interested in a full-time driving position.  Plaintiff, however, has offered evidence from which the jury could conclude that this was not true and was simply pretextual.  This includes: (1) plaintiff's testimony regarding statements made by defendant's employees that defendant was in immediate need of hiring a person; (2) plaintiff's testimony as to his conversations with the branch manager about the details of the job opening available, his expression of interest even though the job was not full-time driving, and his immediate return of a completed employment application following his meeting with the branch manager, which further demonstrated his interest; (3) plaintiff's testimony that the branch manager

---

[3] See, e.g., Griffin v. Steeltek, 160 F.3d 591, 593 (10th Cir. 1998) (it is "clear" that an employer "cannot inquire at the preoffer stage about an applicant's workers' compensation history") (citation omitted); Downs v. Massachusetts Bay Transp. Auth., 13 F. Supp. 2d 130, 138 (D.Mass. 1998) (employer may not ask at the pre-offer stage about job-related injuries or workers' compensation history); 29 C.F.R. Pt.1630, App. at 362-363 ("This provision makes clear that an employer cannot inquire as to whether an individual has a disability at the pre-offer stage of the selection process. Nor can an employer inquire at the pre-offer stage about an applicant's workers' compensation history.").

expressly made a point during his discussion with him about completing the portion of the application addressing his prior workers' compensation history; and (4) the evidence of what the jury might consider to be shifting explanations by defendant for why plaintiff was not hired. As to the last point, the branch manager's memorandum stating he did not consider plaintiff for employment because he was under the impression plaintiff was only interested in a full-time driving position is an odd way of stating plaintiff was not considered because of his driving record, if that, in fact, was a reason for why he was not hired.[4]

### B.   Separate claims for mental and emotional distress

Defendant makes several arguments for why plaintiff does not have a separate claim for mental and emotional distress as a matter of law. Plaintiff has failed to respond to these arguments and appears to have conceded the point.

In any event, "bodily harm" is a necessary element of an independent claim for negligent infliction of mental distress under North Dakota law, and plaintiff has failed to proffer any evidence of "bodily harm." E.g., Hysjulien v. Hill Top Home of Comfort, Inc., 2013 ND 38, ¶¶ 44-46, 827 N.W.2d 533. Likewise, a claim for intentional infliction of emotional distress under North Dakota law requires proof of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." Id. at ¶ 40 (quoting Muchow v. Lindblad, 435 N.W.2d 918, 923-25 (N.D. 1989)). And here, plaintiff has failed to proffer evidence sufficient to establish either

---

[4] There is some suggestion in the deposition questioning of plaintiff that defendant may also claim that plaintiff would have been ineligible in any event for the job of "driver" because one of its purported requirements was being able to have the physical ability to load and unload materials in excess of 100 plus pounds. However, the jury could conclude that the ability to load and unload as a practical matter meant something different than being able to lift or carry that weight and/or that it would include the ability to use assistive devices. Also, there appears to be a question over the extent to which these job descriptions were actually used by the Williston Branch, and, if so, the extent to which they were followed.

4

that defendant's conduct was extreme or outrageous or that he suffered severe emotional distress.

Consequently, the court will grant summary judgment with respect to any *separate* claim for mental

or emotional distress and only allow recovery for such injuries to the extent they are compensable

for claims pursuant to the ADA and the NDHRA.

### III.    CONCLUSION AND ORDER

Based on the foregoing, defendant's motion for summary judgment (Doc. No. 14) is

**GRANTED** to the extent plaintiff is making separate claims for mental and emotional distress under

North Dakota law and **DENIED** as to plaintiff's ADA and NDHRA claims. [5]

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2014.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

---

[5] Plaintiff's evidence suggesting that he was not hired because of his workers' compensation record, however, is by no means overwhelming.  For example, the jury could credit the branch manager's testimony that he did not believe plaintiff was a good fit based on his perception (whether valid or not) that plaintiff was more interested in a job that involved primarily driving.  In fact, plaintiff's past medical history might lend credence to that at trial.